case number 23-3238 United States of America versus Anthony Sargent at balance. Mr. Shipley for the balance. Mr. Dushevsky for the Eppley. Mr. Shipley, good morning. Good morning, Your Honor. Whenever you're ready. May it please the court, counsel for the government. Given the limited time available to me, I want to focus initially on the question of the denial of acceptance of responsibility by Judge Friedrich. As the court can discern from the briefs filed, the sequence, the procedural sequence of events here was unusual. Due to events beyond anyone's control, the change of plea in this case was not taken before Judge Friedrich. It was taken before Judge McFadden, who had no background or understanding of the case. Judge Friedrich then reviewed only a cold transcript of that proceeding and drew certain conclusions about Mr. Sargent's willingness to accept responsibility from the words on the page. When in fact, the circumstances were that Mr. Sargent had rejected a plea offer to the loan felony section 231 and instead pled guilty to all the offenses. And the reason for that was the government's plea offer included an obligation that he sit for an interview, and he was not willing to sit for an interview. So he opted to simply plead guilty to every charge. Therefore, we didn't have a plea agreement when we went before Judge McFadden, and the various issues had to be sorted out on the record in real time. There was an outline of a factual basis taken from the rejected plea offer drafted by the government. And at certain points, Judge McFadden went through a colloquy and asked Mr. Sargent to answer questions, which he did without reservation and without refusal. The government asked for certain additional facts to be included, and those were included. Those are reflected in the handwritten notations on the typed document that was filed as part of the record of the case. Judge Friedrich was notwithstanding the history with two judges, she was the finder of fact for sentencing purposes, right? She found that your client was not forthcoming on various details relevant to the sentencing. Yes, and I should have started with this. I am under no illusion that this is an uphill climb. I am well-versed, having done this work for 35 years, that the sentencing judge has great discretion and that this court gives great deference to the determinations made by the sentencing judge. But when she found that he had not been forthcoming, he had been forthcoming before Judge McFadden, which she could not observe. And he had only had one opportunity to speak before her, and that was at the very end of the second sentencing hearing. And in response to what he said, she acknowledged that he seemed to have come a long way in accepting responsibility. But in her view, at that late stage, it was too little, too late. Well, that was the first instance, the first opportunity presented to him. Her criticism was that we had contested certain factual issues at sentencing in our sentencing statement. She suggested that they were false denials or that they were frivolous issues. The problem was, by entering an open plea without an agreement, it reserved to Mr. Sargent the right to challenge relevant facts. And our challenges were based on a failure of proof that the government did not have the evidence necessary to even preponderate on the issues at question. And those issues were the nature of the object we threw. Judge McFadden asked him, what was the object? Was it a heavy, rock-like object? And Mr. Sargent said, I wouldn't call it heavy. That was it. That was the basis of the exchange. On that basis, she found that that was a false denial, even though nobody knows what the object was. The best description was some form of construction debris that was laying about. I hope you're going to address the, not simply the acceptance of responsibility, but the sentencing under Section 2A-2 of the sentencing guidelines. And I want to ask you a couple of questions about that. There's no guideline for the major offense that your client was charged with in the indictment of Section 231. That's correct, right? I believe 231 is indexed to Section 2A-2.4. There's no guideline for 231? I could be wrong, Your Honor, but I believe it is indexed to Section 2A-2.4. There is no guideline. If you go to the appendix that is attached to the end of the sentencing guidelines, you will find no guideline for 231. So in that situation, the standard has been that you look for an analogous guideline, which gets you into the question of assault under 2A-2. I just want to go through this rationale. Is that correct? Yes, Your Honor. I don't have the guideline page in front of me. I mean, I know that 2A-2.4 is obstruction of officers. That's the caption of 2A-2.4. Assaults, obstruction, interference with law enforcement. Correct? But 2A-2.4 is interfering with law enforcement. But it does not generally involve... Or 2A-4, right. Yeah, exactly. But it has a reference to 2A-2 if it's an aggravated assault, right? Correct. In the cross reference, correct. Here's my question. In order for there to be an assault, there has to be a victim. Who is the victim in this case? Well, I think Judge Friedrich found that the victim is Officer 1 who was being assaulted. That apparently is the only option. Otherwise, you know, he threw a rock 20 minutes earlier at a door. But it has to be Officer 1. Is there any sworn testimony by Officer 1 that he was put in fear of his physical safety by Mr. Sargent? No. In fact, he said exactly the opposite in an interview with 302 that was part of my sentencing statement. Where he said the big guy in the gray sweatshirt was not among the people assaulting him. It was others in the crowd. When he attempted to arrest the small diminutive woman, others in the crowd set upon him and knocked them to the ground. There, in fact, is a photograph in the government sentencing memo that they had to correct. They said that it showed Sargent grabbing Officer 1 by the arm. And in fact, that turned out not to be true. Correct. And Officer 2 also gave a statement. He was there. Correct. He witnessed it. And what did he say? He said he did not view Mr. Sargent as threatening at all in his interactions with Officer 1. The question I'm asking you is the same question I want the government to be prepared to answer. Who is the victim of the assault? If it's not Officer 1, he doesn't say that he was threatened with bodily injury by Mr. Sargent. And Officer 2 vouches for him, then who is it? And did Judge Friedrich at any point make a finding of fact about the initial assault? Forget about the aggravated assault. You can't have an aggravated assault without an initial assault. Did she make any finding of fact about who was assaulted? She did, Your Honor. And this is what caused me so much consternation at the sentencing. It was going off the rails and I couldn't figure out how we were going, the direction we were going. What she said was the definition of assault used in the District of Columbia is forcible unwanted touching. It's the common law definition. I know Judge Nichols does not use that definition. Judge McFadden does not use that definition. But Judge Friedrich and others do use the common law definition of assault, the elements involving a forcible unwanted touching. And her determination was simply grabbing Officer 1, making physical contact with him and pulling him away from the crowd, regardless of motivation. You know, Mr. Sargent's statement was, I was trying to break up the fight and rescue Officer 1, for lack of a better description. She said that didn't matter. She didn't believe him, but she said that didn't matter. The forcible unwanted touching was his assault on Officer 1. And when this issue was dealt with... Does that mean that the sentencing guidelines, which are supposedly designed to have uniform sentencing throughout the country, are going to vary from state to state because it's the common law of D.C. that it controls here, whereas in Virginia, it has to be putting somebody in fear of physical injury? It's problematic, Your Honor. But what I almost find more problematic is the fact that the phrase aggravated assault doesn't appear in the statute, and it's only defined in an application note. It's not even defined in the guideline itself. It's in an application note. We certainly know the guidelines aren't mandatory, and the application notes carry even less weight because they're just advisory. And so the fact that these cross-references, the definition of aggravated assault, so dramatically change the sentencing parameters of cases like this. I mean, Mr. Sergeant was looking at 8 to 14 months, and instead he was sentenced to the statutory maximum of 60 months. Mr. Shipley, can I ask you a question about a possible legal error? So the district court here looked at 2A2.4, which then cross-references to 2A2.2. But then the charge defense is Section 231. And then the district court also uses Section 231 to count as the other felony. Correct. Is that permissible? Under our decision in Stevens, doesn't Stevens suggest that you can't use the base offense as the other felony for the purposes of 2A2.2? I think that's correct, and I think this has been a matter of some discussion and disagreement among the district judges in these cases because the two offenses happen simultaneously. Some judges have taken the view that there's a temporal relationship here that has to be found, that the other felony has to be something that comes later, not something that happens simultaneously. And so, I mean, if that's the case, then 2A2.2 wouldn't apply at all. I mean, if you can't use the base offense as the other felony, then you wouldn't be able to get any of the, you know, enhancements from 2A2.2. Correct, and that's why when I walked into the sentencing... But you don't make that argument in your brief, so is that something that we could reach? Well, I think it's a legal error, and I think it is, you know... I chose to challenge, you know, the use of the cross-reference on the basis that it's contrary to the statute, but I understand the question the court's asking, and I know it is a question that has been disputed below and has been addressed by this court. So is it plain error? Hopefully. Understanding, you know, the limitations on the court's ability to address it. So, you know, and I think Judge Randolph mentioned something that bothered me at sentencing here, too, which was sort of the buffet nature of Judge Friedrich's reach for the evidence for the enhancements, conflating the two episodes that are separate in time and separated by 20 minutes. And the first episode was... the facts of the first episode were really only established in the record for the 1361 offense, for damage to the doors. And then she used the rock as a basis for a dangerous weapon and an aggravated assault enhancement. So I left the sentencing scratch on my head, and, you know, I don't know what more I can add. I think the briefs are pretty clear, and unless there are further questions by the court, I'll reserve whatever time I have left. I can't quite see it for rebuttal. Okay, we'll give you rebuttal. Thank you. We'll hear from the government. Mr. Dashefsky? Yes. Good morning. Good morning. May it please the court. Revan Dashefsky for the United States. The district court properly calculated Sargent's guidelines range here and applied the aggravated assault guideline, and it properly found that he was not entitled to a reduction for acceptance of responsibility. Turning first to the aggravated assault guideline, one thing that I do want to make clear is that Sargent has not challenged the court's finding that Sargent committed a felonious assault with the intent to commit another felony. That's not the challenge that he raises in this appeal. But he has challenged. The felonious assault on the district court's theory, the felonious assault is the uncharged 111 offense, right? It's the pushing and grabbing of Officer 1, and then also later to clarify in response to Judge Randolph's question, he also pushes both Officer 1 and 2 again further into the crowd when they try to return to the north door to their post. But I'm going to circle back to Judge Rav's question about another felony. I thought her theory is the felonious assault is the uncharged 111 assault. I assume on Officer 1, but bracket that. And then another felony is the charged 231 civil disorder. That's right. It's very odd in a sense. If you start from the charged offense as kind of where we begin and then ask what's another felony? Well, a 231 civil disorder is not another felony relative to 231. But this guideline has this weird cross-reference aspect to it where you start with civil disorder, you go to 2.4. It points you to 2.2. You're kind of in assault land at that point, and everything is key to the assault. And then relative to that guideline, another felony is 231, which is different from 111. Is that your understanding? Yes, and I think that this court's decision in Valdez-Torres addresses Judge Rav's concern, which is when looking at the guidelines, when deciding whether a cross-reference is applicable, a sentence in court is not limited to the narrow elements of the offense of conviction. I get that. That's different from the question that I asked. And so it could be that I'm misunderstanding. I'm not pushing on the uncharged conduct point. I think you're probably right on that. I'm just trying to understand the mechanics of what is the felonious assault and what is another felony. I think that, Judge Katsas, what you said before is right. The felonious assault, it's the confrontation with Officer 1 and then both Officer 1 and 2. And the civil disorder is basically the same assault, but committed in connection with the larger civil disorder. It's partially the same conduct, but 231 and 111 assault don't have the same elements. I believe that this court addressed that issue in Stevens and in Sargent, or one of the two. And one can be another relative. The two can be other just because they're different for Blockburn. Exactly. That's right. Even though it really looks like it's the same conduct underlying both. That was what this court explained. And again, I don't remember if it was Sargent or Stevens or both. Mr. Dashefsky, what do you make of this court's language in Stevens that says any felony offense other than the base offense of conviction fits the meaning of another felony offense? And in Stevens, there was a charge of 111 and 231. And the only reason they said you could treat one as the other felony is because the other felony was different from the base offense of conviction. Where here, the other felony is the base offense conviction. I think that what the court was describing there had to do with what you said, the 111 conviction in that case. And the sentencing court was calculating the guidelines range for the 111, which led to the whole challenge that this court decided ultimately. And so when talking about the base conviction there, they were talking about the 111. They were talking about the assault. And I don't think that that principle negates Valdez-Torres. And if you just give me a moment for me to explain why I think it is relevant, that Valdez-Torres, like I said, the court in considering whether a cross-reference applies is not limited to the offense of conviction. It's not limited to the elements. It's supposed to look to the relevant conduct. It's supposed to look to the underlying conduct. And so in deciding whether or not the cross-reference to the aggravated assault guideline was applicable, whether or not Sergeant engaged in a felonious assault with the intent to commit another felony, the sentencing court properly looked beyond the 231, beyond the elements of that offense to consider his conduct. And so I don't think that there is an issue because he did indeed, as the sentencing court found, feloniously assault officers with the intent to commit the 231, the civil disorder offense to which he pleaded guilty. So the other felony offense can be, in the government's view, the same as the charged offense? Yes, that's right. Isn't there a strange kind of circularity to that? I mean, so here Sergeant has maybe eight levels of enhancement based on a kind of double counting of 231? I wouldn't say that it's double counting. How is it not double counting? Double counting exists under the guidelines when one element allows for enhancement in two different ways. And that's not what's happening here. The sentencing court properly looked at his conduct and said his conduct includes a felonious assault with the intent to commit another felony, the 231. And that triggers the cross-reference to the aggravated assault guideline. There aren't two enhancements based on the same conduct at play here. The reason the court goes to 2A22 is because of the 231 offense. So how can that 231 offense also be the other felony? The court was calculating the guidelines for the 231 offense. Right. And so then you go to 2A22 and then you're counting it again as another felony. You're getting to 2A2.2. You're not counting it again once you get to 2A2.2. You're asking the question that 2A2.4C, the cross-reference to 2A2.2 asks is whether the conduct constituted aggravated assault. Whether in this instance there was a felonious assault with intent to commit another felony. It's a single, in my view, it's a single question. And Valdez-Torres is a little bit different, but Valdez-Torres involved a situation in which someone was charged with an unarmed assault under 111A and assault with a dangerous or deadly weapon under 111B. And that defendant pleaded guilty to the 111A. And the court looked to the cross-reference in 2A2.4 and said this is applicable because he assaulted the officer with a deadly or dangerous weapon, even though that was the exact charge that was left off. And that's not what he pleaded guilty to. Are you aware of any court of appeals cases that have applied an enhancement in exactly this way where the charged offense is also the other felony for the purposes of 2A2.2? I'm not aware. Well, the Fifth Circuit suggests that perhaps this is unpermissible. I'm not familiar with that case. But you're not aware of any case actually doing what happened in this case? Treating the base offense. No, I'm not aware. There are cases like Valdez-Torres that explain that in applying the cross-reference to 2A2.2, the sentencing court should look beyond the narrow elements of the offense to look at the underlying and relevant conduct. Whatever happened to Booker? This case is being argued as if the sentencing guidelines are mandatory. They're only supposed to be guidelines. They're only supposed to be less than mandatory, whatever that means. But I don't see any play in the joints at all here. We've got a very complicated sentencing scenario where you go through double switchbacks and rebounds in order to come up with a number. And that number is only supposed to be a guideline. It's not supposed to be a mandatory. Whatever happened to discretion? Judge Randolph, I think that's a good point because what Judge Friedrich did say is to the extent that I've made any errors in the guidelines calculation, I still think that the sentence imposed is the appropriate sentence. That's boilerplate. We see that all the time. I think it's more than boilerplate here, actually. She explained the reasons. After going through a careful analysis of the 3553A factors, she explained the reasons why she thought that sentence would be appropriate. His leadership role, which the guidelines didn't account for, the egregious nature of the conduct, the repeated engagements with police officers. It wasn't merely a boilerplate. I would give the same sentence regardless, but she provided a reasoned basis for that alternate finding. What do you do with the testimony Judge Randolph referenced from the officers themselves? Seems to be exculpatory on this point. So, first of all, you don't need testimony from the victim to prove an assault. But when the victim says, this person wasn't trying to hurt me. Well, again, the judge was looking at the video evidence here, which has been provided to this court as well. And the statement of Officer 1 was that Sergeant grabbed and pushed him. So that is not the grabbing, the pushing, the offensive conduct. There was no evidentiary hearing. No, there was no evidentiary hearing. Nobody testified under oath?  She made assumptions and findings on the basis of what? Basis of video evidence. This is not a situation where there is no evidence presented to the record. There was video evidence. And Judge Friedrich, if you look at the sentencing transcript, throughout the sentencing transcript, she references the video. She referenced, and this is true with regard. If we look at the video and come to a different conclusion, we don't owe any difference to her because she's looking at a cold record the same way, same as we would. I don't think that's true with regard to actual findings in the sentencing context. Why not? Factual findings are entitled to deference. But you're just resting on a video, and she's looking at the video in just the same way we would. She's looking at the video with regard to acceptance. She's heard the defendant's allocution. I don't know. I'm not aware of a case that says that there is less deference given to district courts factual findings based on the kind of evidence that the determination is based on. Well, there are suggestions in cases there. I don't think their case is going the other way either. And there's a lot of commentary about it that the combined judgment of three appellate judges versus the individual judgment of one district judge looking at the same thing, which would you prefer? We have a system set up where trial courts make factual determinations on all sorts of evidence. And on appeal, we don't retry those cases. There are standards of review. And I think until those standards are overturned, that's what we have on appeal. Her discussion is not absolute, is it? No, it's not absolute. Does the court have any questions about acceptance or any of the other issues? If not, we would ask that the court affirm the judgment of the district court. Thank you very much. Mr. Shipley, give you two minutes. Thank you, Honor. I just have a couple of comments. I think Judge Rouse's comment about the 231 being used twice is accurate here. What Judge Friedrich has to do is calculate the guideline for a 231 offense, not the guideline for an uncharged 111 offense that Mr. Sergeant never admitted to having committed. It's relevant conduct. Sure, absolutely. It's relevant. Those facts are relevant. It's relevant conduct under the guideline, which is a term, as you know. But she is still making a calculation on a 231 offense. So you can't then double back and make the same 231 offense the other felony. Because you're making a calculation on 231, and then you're using the 231 as another felony. The way she did it here, there is no other felony in effect when you use the 111A, because the 111A offense conduct is not followed by anything else. That's the end of Mr. Sergeant's activity, is when he breaks up the scuffle between Officer 1 and the crowd. Officer 1 and Officer 2 then retreat into the building with the assistance of the Metropolitan Police Department, and Mr. Sergeant leaves. So there's no 231 that follows the 111A. And that's a factual... And the last comment I'll make is this question that was raised by the end, or right at the end. The question of, you know, what leeway does this court have? The standard is clearly erroneous. I think if the three judges on this court come to a different conclusion with regard to what the video evidence shows, particularly when Judge Friedrich's conclusions disregard the comments of the two officers, I agree that you don't necessarily have to have the testimony of a victim to establish an assault. But, establishing an assault here flies in the face of the comments of the victim. So I think on that basis, her conclusions are clearly erroneous, and the case needs to be sent back for resentencing. I am really hesitant to ask the court to direct it to a different judge. But given the sequence of events here, you know, the fact of the matter is, Mr. Sergeant is an acknowledged and unrepentant member of the Proud Boys. He is physically imposing at 5'11", 300 pounds. But he was not with any member of the Proud Boys when this conduct took place. And he has no criminal record, not even a reference to any citations or juvenile offenses, zero. He's 47 years old. He's a former professional athlete. Yet, Judge Friedrich buried upward and gave him the statutory maximum. And I just, I can't make sense of any of it. Thank you, Your Honor. Thank you, Counsel. The case is submitted.
judges: Katsas; Rao; Randolph